[Civ. No. 11889. First Dist., Div. One. Nov. 4, 1941.]

Adoption of EDWARD JOSEPH KELLY, JR., a Minor. LAWRENCE SCHWEITZER et al., Respondents, v. EDWARD JOSEPH KELLY, Appellant.

James D. Lucey for Appellant.

Chalmer Munday and Edward J. Jose for Respondents.

WARD, J.—The questions on this appeal from an order of adoption involve: (1) The jurisdiction of the superior court of one county to grant an order for the adoption of a minor child, with the consent of the mother, against the objection of its natural father, while there is in force a prior order made by the superior court of another county in terms as follows: "IT IS ORDERED AND DECREED that the minor child of the parties, Edward Joseph Kelly, Jr., stay with the defendant father on the fourth Saturday night of every month hereafter commencing with the month of April, 1936, and until further order of Court. This order is made without prejudice to any motion subsequent to modify final decree of divorce or any order amending same heretofore made by this Court." (2) Whether the evidence shows that appellant neglected to pay for the support and education of the child, although able to do so, for a period of one year.

Mrs. Schweitzer, the mother of the minor, was granted a final decree of divorce in May, 1935, in the city and county of San Francisco in an action brought by her against Edward Joseph Kelly, contestant herein, her former husband. She was awarded the custody of the child, and the father was ordered to pay $25.00 a month for the child's support. Subsequently the mother remarried, and she and the child's stepfather petitioned the superior court in San Mateo County for an order permitting the adoption of the minor, who at the time was eight years of age. The court granted the petition, and from such order the contestant appeals.

"In actions for divorce the court may, during the pendency of the action, or at the final hearing or at any time thereafter during the minority of any of the children of the marriage, make such order for the custody, care, education, maintenance and support of such minor children as may seem necessary or proper, and may at any time modify or vacate the same." (Civil Code, sec. 138.) "A legitimate child can not be adopted without the consent of its parents if living; provided, however, that after the custody of any child has by any judicial decree, been given to the mother, and the father for a period of one year shall wilfully fail to pay for the care, support and education of such child when able to do so, then the mother alone may consent to such adoption, but only after the father has been personally served with a copy of a citation. . . . " (Civil Code, sec. 224.)

Adoption proceedings must be instituted in the superior court, a court of general jurisdiction. (Civil Code, sec. 226.) ■ "The judgment or order of adoption is entitled to all the presumptions which attach to any other judgment of such courts." (*Estate of Grazzini,* 31 Cal. App. (2d) 168, 171 [87 Pac. (2d) 713].) ■ Irrespective of the precise wording of a decree, under the provisions of Civil Code, sec. 138, the custody of a child may be changed at any time during minority. The guiding consideration in determining not only custody, but education and maintenance, is the best interests of the child. ■ Without application for divorce, a court may award exclusive or partial custody or control, and is empowered in accordance with the natural rights of the parents and the best interests of the minor to direct either party to support, care for or educate the child. (Civil Code, secs. 199, 214; Probate Code, secs. 1406, 1408.)

■ The right or privilege set forth in the above quoted order—that the minor stay with the father on the fourth Saturday night of every month—was subject to modification at any time. The mother and the stepfather, who had moved to San Mateo County, desired the minor's adoption. For such purpose it was proper to file a petition in "the superior court of the county in which the petitioner resides." (Civil Code, sec. 226.) In *Estate of Lewellyn Williams,* 102 Cal. 70 [36 Pac. 407, 41 Am. St. Rep. 163], it appeared that a child's parents had been divorced in the state of New York on the ground of the adultery of the father. At the time of the child's adoption by her uncle and his wife in California, the mother was dead, and the father was a resident of New York. In that case, pp. 81, 82, the court said: "The remaining question to be considered is whether the validity of the order of adoption is affected by the fact that it was made without . . . notice to him. As already stated the father of respondent had been divorced from the mother on the ground of his adultery, and such being the case, his consent to the order of adoption was rendered unnecessary by the express provisions of section 224 of the Civil Code then and now in force. The fact that the decree of divorce was made before the enactment of our Civil Code, and for an act of adultery committed in another state, did not make that section inapplicable to the proceeding taken by the deceased for the adoption of respondent, and to so hold is not

to give any retroactive or extraterritorial effect to the provisions of that section. The section simply declares under what circumstances the consent of the natural parent shall not be required in a proceeding for the adoption of a child, and it was intended to furnish the rule in regard to that matter in all subsequent applications for adoption under the statute." It should be noted that in the mentioned case, the attack grew out of a claim of the adopted child to an interest in the estate of one of the adopting parents, a collateral matter.

In interpreting section 224 as it formerly read, it was held that the consent of a parent divorced for cruelty or adultery was required where custody of the child was awarded by a divorce decree. (*Matter of Cozza,* 163 Cal. 514 [126 Pac. 161, Ann. Cas. 1914A, 214].) It was also held that where the parent to whom custody had been awarded died, the right of the other parent, although divorced for adultery or cruelty, revived, and the consent of such parent was required by the section. (*In re DeLeon,* 70 Cal. App. 1 [232 Pac. 738].) Section 224 in its present form does not provide that consent need not be obtained from a father or mother adjudged guilty of adultery or cruelty by decree of divorce. In view of the decision as the section formerly read, appellant contends that under the present reading it should be held that before the consent of the father can be dispensed with in the present proceeding, it must appear that the mother has exclusive custody under judicial decree. In support of this contention appellant cites *Miller* v. *Higgins,* 14 Cal. App. 156 [111 Pac. 403]. Certain language appears in the opinion in that case which might seem to support appellant's theory, but the case involved a peculiar factual situation so different from the present case as to be of no assistance. There the father had sought modification of a divorce decree in Contra Costa County. After the court had announced its intention of modifying the decree, but before the entry of the order, the mother, without the knowledge of the father and without informing the court in Los Angeles County of the pendency of the motion in Contra Costa County, succeeded in having third parties adopt the child, following which she retained the child in her care. The court in rendering its decision said (pp. 162, 163): "The record discloses that the fraud practiced upon the court making the order of adoption in

this case was the concealment from the court of facts affecting its jurisdiction. It is unnecessary to cite authorities in support of the proposition that when a court competent to adjudicate upon the subject matter of the litigation obtains jurisdiction over the parties, within the territorial limits of its extent, such court alone has the power to adjudge upon the questions sought to be litigated in the suit, and no other court can deprive it of that power. The court finds, and it is most evident, that but for the concealment of the facts referred to it would not have made this decree of adoption in the first instance. Such concealment of facts affords ground for relief in equity. (1 Bigelow on Fraud, p. 92.)'' In the present case the record does not disclose that a motion for modification of the decree was pending.

In *Younger* v. *Younger*, 106 Cal. 377 [39 Pac. 779], it was held that a court of another county than that which granted the divorce and made an award of custody had jurisdiction of an adoption proceeding, though in the Younger case the decree awarding custody of the child did not contain a provision similar to that in the present case, namely, permission to have the child stay with the father one night a month. The question of custody, limited or absolute, depends primarily upon the terms of the decree. The record shows that on May 1, 1940, the superior court in San Francisco County made an order that the father ''shall have the custody'' of the minor on the fourth Saturday night of every month. Sixteen days later, in an order amending the previous order amending final decree, all reference to custody was stricken out and the child permitted to ''stay'' with the father at the designated period. It is evident that the Superior Court of the City and County of San Francisco did not intend that the ''stay'' should be construed as ''custody,'' but rather that the child might visit his father for one night a month. The right of visitation does not bestow legal custody. (*In re Hardesty's Adoption,* 150 Kan. 271 [92 Pac. (2d) 49].)

█ Custody, similar to care, control and direction for education, are incidents of a divorce decree that may be affected by adoption proceedings. Where the conditions specified in section 224 exist, an adoption may be ordered, notwithstanding parental interest, including specified privileges under a divorce decree. ''As between parents adversely claiming custody, neither parent is entitled to it as

of right." The child's "temporal and its mental and moral welfare" (Civil Code, sec. 138) are the guiding considerations in determining custody, control, care, maintenance and education.

It appearing that the superior court in San Mateo County obtained jurisdiction in the adoption proceedings (*Younger* v. *Younger, supra; In re Darling,* 173 Cal. 221 [159 Pac. 606]), only one further question requires consideration: Did "the father for a period of one year . . . wilfully fail to pay for the care, support and education of such child." (Civil Code, sec. 224.) *In re Hickson,* 40 Cal. App. (2d) 89 [104 Pac. (2d) 411], is a case where adoption by the step-father was denied by the trial court and its decree affirmed on appeal. The point of decision rested upon the wilful failure of the father to provide for his child. The court held (pp. 92, 93): "In section 227 it is provided that the court shall make the order of adoption if it is satisfied that the interests of the child will be promoted thereby. The trial court, being solicitous to preserve the family relationship and to protect the rights of the child and of its natural parent, doubtless was of the opinion that the best interests of the child would not be promoted by the adoption. In such cases a wide discretion is reposed in the trial judge, and his decision should not be disturbed by a reviewing court in the absence of a clear showing of an abuse of such discretion."

In the present case, for about two years prior to the date of adoption, the father had failed to pay anything for the child's support. The last payment appears to have been made in May, 1938, in the sum of $12.50. Prior to that time payments were made on certain months in full, but generally in amounts smaller than that fixed by the court. He had worked approximately seven months in 1939 and had just been laid off at the time of the adoption hearing in May 1940. The record shows that he had the ability to pay something toward the support of the child in the year preceding the adoption order, and he seeks to excuse his failure to obey the order of the court upon the theory that the mother moved to an adjoining county and that he did not know where the child was living; that he visited the former residence of his wife and inquired of a small boy as to where the family had moved but was unable to obtain the information. Appellant did not use the mail as a means of communicating with either

the child or the mother. Perhaps the mother was remiss in failing to notify the father of the change of address. Conflicting statements of the mother and father appear in the record. Throughout the history of the case as related, it is clear that the father was lax in endeavoring to locate the child; that he made no determined effort in good faith to discover its whereabouts or to afford it support during the year before the adoption, during which time the child was supported by his stepfather. For a period of three years before the interlocutory decree was entered, the child was supported by his mother; and thereafter only intermittently by his natural father. During a part of this period the latter was without work, but clearly there were intervals during which his failure to support his child was without lawful or any excuse, and hence the finding that he wilfully failed to support the child has foundation in fact.

Under all the circumstances of the case, we are unable to say that the trial court abused its discretion. (*In re Fahlman*, 84 Cal. App. 248 [257 Pac. 893] ; *In re Hickson, supra.*)

The judgment, order and decree is affirmed.

Peters, P. J., and Knight, J., concurred.