IN RE PETITION OF EUGENE M. NELSON AND ANOTHER
FOR ADOPTION OF ARTHUR WILLIAM BYE AND
ANOTHER v. ARTHUR WILLIAM BYE.

135 N. W. (2d) 700.

May 14, 1965—No. 39,519.

*William E. Kalar,* for appellant.
*Robert R. Pflueger,* for respondents.

MURPHY, JUSTICE.

This is an appeal from a judgment and decree for adoption of appellant's minor children by his divorced wife and her present husband. Minn. St. 259.24, subd. 1(b), provides that no child shall be adopted without the consent of his parents, except where a parent has abandoned the child or has lost custody through a divorce decree. This case raises the issue as to whether the consent of the father is necessary under circumstances where by an amended decree custody was given to the mother subject to the right of the father to reasonable visitation and "to take the children with him" for a 3-week period in each year. It is contended that the father's right thus expressed is not a right of custody which requires his consent to the adoption.

From the record it appears that appellant, Arthur William Bye, and his wife, Jean Louise, were divorced in November 1960. By the decree of divorce custody of their two children, Arthur William, Jr., age 6, and John Leslie, age 4, was awarded to the mother, subject to the father's right to visit the children twice weekly and to have temporary custody of them for 3 weeks during the summer vacation. The decree also required the father to pay the sum of $50 per month in support of each of the children. The mother married the petitioner Eugene M. Nelson on January 23, 1961, about 2 months after the divorce decree was entered. After the second marriage, the children were taken by the mother to the farm home of her second husband near Ortonville, Minnesota, a distance of 168 miles from where they had previously resided in Hennepin County. Subsequently, appellant by motion sought an order of the District Court of Hennepin County adjudging the mother in contempt, presumably because she unlawfully removed the children from Hennepin County. The motion further asked that in view of the changed residence of the children definite visitation rights be provided, that the support payments be modified, and for other relief not pertinent here. On this motion the trial court

determined that the wife had "remarried within the period of the statutory prohibition against remarriage"; that she had removed the children from Minneapolis "without informing the Department of Court Services of her exact location so that arrangements could be made for appropriate visitation" in accordance with the judgment and decree; that the father would be subjected to an additional expense in visiting his children by reason of the wife's conduct but that the wife's default "does not constitute a wilful contempt." The court went on to make an order amending the divorce decree by reducing support payments to $40 a month for each child until he reached the age of 21 years and providing:

"That the defendant have the right of reasonable visitation with the minor children of the parties upon arrangements made by and through the Department of Court Services, which arrangements shall include notice to the plaintiff of any failure to comply with the arrangements made by and through said Department of Court Services at least 24 hours prior to the time of the scheduled visitation. *That defendant shall have the right of visitation for a period of three weeks during the summer school term vacation, which shall be the first full three weeks in August of each year, with the right to take the children with him, unless otherwise arranged through the Department of Court Services.*" (Italics supplied.)

It would appear that the trial court felt that in view of the changed residence of the children, the "twice weekly" visitation privilege was no longer practical, but that the temporary custody provision of the original decree giving appellant charge of the children for 3 weeks of the summer school vacation should not be changed. The wording used in the amended decree which omits the term "temporary custody" gives rise to the issue with which we are presented. It is contended by respondents that the omission of the term "custody" has altered the relationship so as to dispense with the necessity for the father's consent to adoption. Section 259.24, subd. 1(b), provides:

"No child shall be adopted without the consent of his parents * * * except in the following instances:

        \*     \*     \*     \*     \*

"(b) Consent shall not be required of a parent who has abandoned the child, or of a parent who has lost custody of the child through a divorce decree, and upon whom notice has been served as required by section 259.26."

This issue must be resolved by what we said in In re Petition of Parks, 267 Minn. 468, 127 N. W. (2d) 548. That case related to custody of a child granted pursuant to a stipulation in a divorce proceeding. The father was given custody of the child subject to the right of the mother to have custody at certain intervals. Both parents remarried and subsequently the child's stepmother, with the father's consent, initiated adoption proceedings. It was there contended that the mother's consent to the adoption was not necessary. In that case we discussed at length the construction to be given generally to § 259.24. We pointed out (267 Minn. 474, 127 N. W. [2d] 553) that in the judgment of the legislature "the best interest of a child will most likely be served if parental consent is required in all cases except abandonment and loss of custody through divorce." We went on to say:

"* * * The correlative rights and duties inherent in the parent-child relationship are natural rights of such fundamental importance that it is generally held that parents should not be deprived of them 'except for grave and weighty reasons.' In an adoption proceeding, where an absolute severance of this relationship is sought, the consent provisions are designed to protect the natural rights of a parent to the custody, society, comfort, and services of the child. These rights were protected by the common law. Since the statute is in derogation of the common law, it is quite uniformly held that provisions abrogating the necessity of parental consent be construed strictly in favor of the parent and the preservation of the relationship."

We concluded that the legislature intended that consent of a divorced parent may be dispensed with only in those cases "where the divorce decree, judged as of the time of issuance, expressly or by necessary implication extinguished the right to custody." 267 Minn. 476, 127 N. W. (2d) 554.

In the Parks case we followed the approach of those courts which

recognize the right of the natural parent and the fundamental importance of his relationship with his child in controversies involving termination of the parent-child relationship. 2 Am. Jur. (2d) Adoption, § 7; In re Slaughter (Mo. App.) 290 S. W. (2d) 408; Nevelos v. Railston, 65 N. Mex. 250, 335 P. (2d) 573; Rubendall v. Bisterfelt, 227 Iowa 1388, 291 N. W. 401; In re Adoption of Perkins, 242 Iowa 1374, 49 N. W. (2d) 248.

It cannot safely be said that a parent is unfit and should be permanently denied all parental rights merely because the decree awards custody to the other parent. It should be kept in mind that the decree awarding custody is effective only as between the parents and is always subject to subsequent modification or revision to promote the best interests of the child. Minn. St. 518.18. In the absence of evidence of unfitness which would warrant severance of the parent-child relationship in the interest of the child's welfare, the right of the natural parent who initially loses custody of a child as a result of a divorce decree should not be extinguished so as to prevent such parent from seeking custody in the event of death, subsequent divorce, or other changes in circumstances of the prevailing party. 2 Am. Jur. (2d) Adoption, § 28; 49 Minn. L. Rev. 131.

Here, there is nothing in the record which indicates that the father is an unfit person or that he has abandoned or failed to support and care for the children. In granting the adoption it appears that the trial court was influenced by certain factors which interfered with the children's best interests. The court felt that the children should be free from the embarrassment of bearing the name of the natural father while they lived in the home of the stepfather and mother and that the latter should be spared feelings of resentment manifested by the children which carried over from visits with the natural father.

We find no difficulty in determining on the record before us that appellant here is not a person within the purview of § 259.24, subd. 1(b), who has abandoned his children or has lost custody of them through the amended divorce decree. It seems to us that under the provisions of the amended decree of divorce the right given to the natural father to reasonable visitation and "to take the children with

him" for a period of 3 weeks in August of each year, unless the Department of Court Services arranges otherwise, is a sufficient right to custody to give him the status of one whose consent to adoption is required.

Reversed.