Jack Joye BOND and Elaine Kay Bond,
Plaintiffs and Appellants,

v.

Reuben E. CARLSON, as Director of the Division of Child Welfare of the Public Welfare Board of the State of North Dakota, and Harley Frederick Hettick, Respondents.

No. 8696.

Supreme Court of North Dakota.

June 23, 1971.

Wolf & Glaser, Bismarck, for appellants.

William R. Mills, Bismarck, for respondent Harley Frederick Hettick.

LYNCH, District Judge.

## NATURE OF THE CASE

This is an appeal from an order of the District Court of Morton County, Sixth Judicial District, the Honorable C. F. Kelsch presiding, dismissing the petition of the appellants, Jack Joye Bond and Elaine Kay Bond, to adopt the minor children Gregory Frederick Hettick and Michelle Elaine Hettick.

Harley Hettick and the petitioner Elaine Kay Bond were formerly husband and wife and are the natural parents of the children sought to be adopted.

A divorce decree was entered in the District Court of Burleigh County January 23, 1969, dissolving their marriage and award-ing the natural mother the care, custody, and control of the minor children.

Thereafter the mother of the children married Jack Joye Bond, and the Bonds petitioned the District Court in and for Morton County for the adoption of the children.

No testimony of the parties was taken at the adoption hearing.

The order appealed from recites the dismissal was on the following grounds:

(1) That the natural father of the children had not consented to the adoption and would not waive any parental rights;

(2) That in the divorce decree the natural father had been awarded certain valuable rights of visitation of the children; and

(3) That the parental rights of the natural father had not been terminated by action or by law.

The appellants' Specifications of Error are as follows:

(1) That the Court erred in ruling as a matter of law that the consent of the natural father was required before the Court could grant an adoption;

(2) That the Court erred as a matter of law in not proceeding with hearing the petition for adoption on its merits; and

(3) That the Court erred as a matter of law in failing to determine that the consent of the father was not essential in this proceeding, the said father having lost custody of the children in a divorce proceeding.

## IS CONSENT ESSENTIAL?

The divorce decree entered in the action involving the natural parents, Elaine and Harley Hettick, dated January 23, 1969, provided, in part:

[T]he Plaintiff shall be awarded the care, custody and control of the minor children of the parties, Gregory Freder-

ick, age 5 years; Michelle Elaine, age 19 months; subject to visitation as hereinafter set forth. That the Defendant may visit the 5 year old child after breakfast, returning him prior to the evening meal, when he is in the vicinity of the residence of the Plaintiff, and when he has made prior arrangements with the Plaintiff. That the same visitation will apply to the youngest child of the parties when she reaches the age of 5 years. And that the Defendant's parents may visit the eldest child every second Saturday from 2:00 o'clock to 5:00 o'clock, p. m., and take him from the Plaintiff's residence, subject to prior arrangements made with the Plaintiff; if that is inconvenient, they may visit him Sunday afternoon during the same time period on every second weekend; visitation being limited to either Saturday or Sunday on any second given weekend; and they may visit the youngest child under the same conditions and circumstances when she reaches the age of 5 years.

The divorce decree further provided that the defendant was to pay fifty dollars per month for each child as child support until the children reached their maturity and in addition pay the sum of twenty-five dollars per month for an educational fund for the children of the parties. Such educational fund payments were to continue until the younger child reached her majority. The payments were current as of the date of the adoption hearing.

N.D.C.C. Sec. 14–11–04 provides, in part:

A legitimate child cannot be adopted without the consent of its parent or parents, nor an illegitimate child without the consent of its mother, but the consent of a parent who has abandoned the child, or who cannot be found, or whose parental rights have been terminated as provided by law shall be dispensed with and consent may be given by the director of the division of child welfare of the public welfare board, or waived by order of the court. If the parental rights of one parent have been judicially terminated the consent of the other parent is sufficient. The consent of a parent who is insane or otherwise incapable of giving consent, may be dispensed with, and consent may be given by the guardian, if the child has a guardian, or if there is no guardian, by the director of the division of child welfare of the public welfare board. *The consent of a parent who has lost custody of the child through divorce proceedings,* or of the father of an illegitimate child *shall not be required.* * * * (emphasis added)

North Dakota Century Code.

N.D.C.C. Sec. 14–11–10 provides that notice of the adoption hearing must be given to any parent not consenting, whose parental rights have not been terminated, including a parent who has lost custody of a child through divorce proceedings.

The appellants contend that since the divorce decree gave custody of the children to the mother, consent by the natural father to the adoption of the children is not essential and not required under the provisions of N.D.C.C. Sec. 14–11–04.

The transcript of the proceedings before the judge presiding in the adoption proceedings merely sets forth the discussion between the counsel for the parties and the presiding judge concerning their respective views as to applicable law and the nature of any testimony counsel intended to produce.

The District Judge, in the initial stages of the adoption hearing, stated:

* * * Mr. Mills, the court inquires of you whether the father of these children, at this time, still refuses to give his consent to the adoption of his two minor children by Mr. Bond, as petitioned for by him?

MR. MILLS: Yes, sir, the consent is refused, your honor.

THE COURT: Well, gentlemen, the court has read the briefs you have sub-

mitted, and I find upon my own investigation that where, as here, the father refuses to give his consent to the adoption, the court must first determine, as a matter of law, whether or not his consent is necessary. If it isn't necessary, why then, of course, you proceed to the merits of the petition. On the contrary, if * * * the court determines that his consent is necessary and he has refused, then, of course, the proceedings have to be dismissed because where his consent is essential and it isn't given then, of course, the court has no authority to proceed with the consideration of the petition upon its merits.

However, the presiding judge, at a later point in the hearing, in addressing counsel for the petitioners, stated:

But unless you can show now that there are ·sound, serious reasons why this adoption should be granted, I am going to hold the consent is required under our statute.

Thus, it would appear the trial court was of the opinion that consent of the noncustodial parent to the adoption was not essential in each and every adoption case, but that unless the evidence established sufficient grounds which would, considering the best interests of the children, authorize and justify the granting of the adoption, the adoption could not be granted without the natural father's consent.

A review of the cases dealing with this issue reveals a diversity of opinion on the issue of the necessity of consent of a noncustodial parent in various jurisdictions having statutory provisions similar to ours, and, indeed, even between various decisions within the same state, depending upon the facts and circumstances existing in each case. See: Annot., 47 A.L.R.2d 824 (1956) [Adoption—Consent of Divorced Parent].

The Minnesota Supreme Court has considered issues similar to those now before us in a series of cases beginning with In re Jordet's Petition, 248 Minn. 433, 80 N.W. 2d 642 (1957).

In *Jordet's* a divorce decree was entered wherein the parents stipulated the custody of a child, Robert Lloyd Wilkinson, Jr., was to be awarded to the mother, with the natural father being given certain visitation rights. Thereafter the natural mother married Mr. Jordet, and they petitioned the court to grant Mr. Jordet's petition for the adoption of the child.

The natural father would not consent to the adoption. However, the district court granted the petition for the adoption. The Minnesota Supreme Court affirmed the district court judgment and held the natural father's consent was not a prerequisite to the granting of the adoption decree.

The Minnesota statute pertaining to consent of a natural father is similar to ours and provided:

Consent shall not b'e required of a parent who has abandoned the child, or of a parent who has lost custody of the child through a divorce decree, and on whom notice has been served, as required * * *.

In Nelson v. Bye, 271 Minn. 194, 135 N. W.2d 700 (1965), the Minnesota Supreme Court was again faced with the issue of whether consent to an adoption was necessary in a petition for the adoption of a natural father's minor children filed by his divorced wife and her husband.

Under an amended divorce decree, custody of the children was given to the mother, subject to the right of the father to reasonable visitation and to "take the children with him" for a three-week period in each year.

The Minnesota Supreme Court, in *Nelson,* while noting that a decree awarding custody is effective only as between the parties and is always subject to modification or revision to promote the best interests of the child, held that in the absence of evidence of unfitness which would war-

rant severance of the parent-child relationship in the interests of the child's welfare, the right of a natural parent who loses custody of a child as a result of a divorce decree should not be extinguished so as to prevent such parent from seeking custody in the event of death, divorce, or changes in the circumstances of the prevailing party. The Court pointed out that there was nothing in the record to indicate that the father was an unfit person or that he had abandoned or failed to support the children, and they noted that the visitation provisions gave the natural father a sufficient right to custody to give him the status of one whose consent to adoption was required in the absence of evidence of unfitness.

In the case of Eggert v. Van de Weghe, 279 Minn. 31, 155 N.W.2d 454 (1967), the Minnesota Supreme Court confirmed its holding in Nelson v. Bye, *supra,* in which they held the evidence did not establish unfitness on the part of the natural parent essential to the termination of parental rights, and that the consent of the natural father was therefore required before there could be any adoption of the child. In *Eggert* the Court held the consent of the natural parent who does not have custody may be dispensed with only in those cases where the issue of the alleged unfitness underlying parental rights is raised and adjudicated in the divorce proceedings, and the natural parent's right to custody is extinguished by the divorce decree. The Court pointed out there was nothing in the record of the divorce which indicated that the question of the natural father's fitness was either raised or adjudicated. It was held that the petitioners had not sustained their burden of proving the natural father unfit to retain his parental right to have or seek future custody of the child in the event that a change of circumstances required or justified such a change of custody.

As the trial judge in the case now before us correctly observed, the mere fact that a divorce decree awards custody to one parent does not necessarily mean custody has been permanently extinguished. N.D.C.C. Sec. 14–05–22 provides:

> 14–05–22. Custody of children.—In an action for divorce, the court, before or after judgment, may give such direction for the custody, care, and education of the children of the marriage as may seem necessary or proper, and may vacate or modify the same at any time.

North Dakota Century Code.

■ We have repeatedly held that the district court in which the divorce decree was obtained has continuing jurisdiction insofar as the rights of the children are concerned (Eisenbarth v. Eisenbarth, 91 N.W.2d 186 (N.D.1958)), and that such award of the custody, care, and education of the children of the parties may be modified at any time by a proper showing of changed conditions (Blanton v. Blanton, 142 N.W.2d 608 (N.D.1966); Kucera v. Kucera, 117 N.W.2d 810 (N.D.1962)).

Thus, if conditions change (as, for example, the person having custody of children under a decree becomes an unfit parent), a divorce decree may be amended to award custody to the parent that originally lost custody or was deprived of custody in the initial divorce decree.

■ The natural father is assured an opportunity to be heard in an adoption proceeding by the requirement that he be given notice of the time and place of the adoption hearing as provided in N.D.C.C. Sec. 14–11–10, but he is given no absolute "right of veto." In re Jordet's Petition, *supra,* 248 Minn. 433, 80 N.W.2d 642, 647. See: In re Kelly's Adoption, 47 Cal.App.2d 577, 118 P.2d 479 (1941); In re Clark, 183 N.W.2d 179 (Iowa 1971); In re Adoption of Moriarity, 260 Iowa 1279, 152 N.W.2d 218 (1957); In re Chinn's Adoption, 238 Iowa 4, 25 N.W.2d 735 (1947). Also see: Comment, Consent in Adoption in Iowa, 33 Iowa L.Rev., 679, 685 (1948).

■ We hold the provisions of the divorce decree in this case did not terminate the natural father's parental rights to his children or set forth an adjudication of unfitness, nor was he permanently deprived of custody of the children, and, therefore, he has not "lost custody" of the children, within the sense and interpretation of that phrase as it is used in N.D.C.C. Sec. 14–11–04.

■ An adoption should not be granted in the absence of consent of a natural parent unless the evidence establishes grounds for termination of parental rights as provided in N.D.C.C. Sec. 27–20–44, or the parent was adjudicated unfit in the divorce proceedings.

## DISMISSAL OF ADOPTION PROCEEDINGS

Dismissal of the adoption proceedings was ordered without taking any testimony of the parties. However, during the proceedings, the trial court, through its questioning of counsel for the petitioners, determined that they did not intend to claim or submit evidence to prove that the natural father had deserted or abandoned the children, nor that his payments required under the divorce decree were not current, nor that he was depraved or had been convicted of any serious crime. Counsel for the petitioners indicated that he would present some evidence of the effect of the exercise of the visitation rights upon the children, but "I do not intend to prove these matters, because my position is that it isn't necessary." Thus, the record reveals that only evidence concerning the effect of the exercise of the visitation rights on the children would be presented.

To change or curtail rights of visitation as given under a divorce decree is one thing, but to terminate permanently all parental rights, as is the result of the issuance of an adoption decree, is quite another.

As previously pointed out, the court in which the divorce decree was issued has continuing jurisdiction over questions of custody and also visitation rights. If the appellants feel the visitation rights should be changed or modified in the best interests of the children, they have the right to seek the modification of the visitation rights in the jurisdiction wherein the divorce decree was issued.

In Eggert v. Van de Weghe, *supra*, the Minnesota Supreme Court held that the parties seeking the adoption have the burden of proving the noncustodial parent unfit to retain his parental rights or to have or to seek future custody of the child in the event that a change of circumstances requires or justifies such a change.

The Minnesota Supreme Court then reiterated its holding in Wilson v. Barnet, 275 Minn. 32, 144 N.W.2d 700 (1966), stating:

> The question of whether a parent who does not have custody is unfit and his parental rights subject to termination by conduct condemned under the statute ought to be separately determined prior to a consideration of whether the adoption would serve the best interests of the child. Such a procedure, if followed in this case, would likely have avoided the error evident here of the parties' failing to submit evidence on the critical issue of unfitness and would have enabled the court to make specific findings on that issue. * * *

Eggert v. Van de Weghe, *supra*, 279 Minn. 31, 155 N.W.2d 454, 458.

N.D.C.C. Sec. 27–20–03, the Uniform Juvenile Court Act, provides the juvenile court has exclusive jurisdiction in proceedings for the termination of parental rights "except when a part of an adoption proceeding." [N.D.C.C. Sec. 27–20–03(1) (b)]

■ As previously pointed out in this opinion, one of the paramount issues to be determined in an adoption proceeding under facts and circumstances as shown by the record in this case is the issue of the unfitness of the noncustodial parent, and the

petitioners in an adoption proceeding have the burden of proving such unfitness.

The petitioners did not indicate they would submit any evidence on the issue of the unfitness of the noncustodial parent, Harley Hettick.

Thus, it is our decision that under the state of the record, the trial court did not err in dismissing the petition for adoption without prejudice to the bringing of a new petition should there be a change of conditions which would authorize the granting of a decree of adoption.

The order of the court dismissing the petition for adoption is therefore affirmed.

STRUTZ, C. J., and ERICKSTAD, PAULSON and TEIGEN, JJ., concur.

The Honorable HARVEY B. KNUDSON deeming himself disqualified did not participate; the Honorable W. C. LYNCH, Judge of the Fourth Judicial District sitting in his stead.